UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MANSOOR SALEH,

Plaintiff,

v.

**DECISION AND ORDER**
12-CV-0468S

COUNTY OF ERIE, ERIE COUNTY SHERIFF'S
DEPARTMENT, CITY OF LACKAWANNA,
CAPTAIN GREGORY SAVAGE, DEPUTY
JORDAN GRABAR, DEPUTY WARREN
HAWTHORN, DEPUTY ERIK KADERLI, DEPUTY
WARREN LUICK, DEPUTY MATT NOECKER,
DEPUTY SCOTT PIEL, DEPUTY DAN WALCZAK,
DEPUTY GREGORY KENT, DEPUTY DAVID
DELECKI, ROSANNE MYERS AS EXECUTRIX
OF THE ESTATE OF DEPUTY DARYL DEMARI,
OFFICER JEFFREY WELSH, OFFICER PHILIP
FRATERRIGO, OFFICER AARON BRENNAN,
OFFICER CHUCK JAWORSKI, OFFICER MARK
PACKARD,

Defendants.

# I.    INTRODUCTION

In January of 2011, Mansoor Saleh (Plaintiff) was an overnight guest at a house that was subject to a search warrant executed by members of the Erie County Sheriff's Department and the Lackawanna City Police Department. Plaintiff was seized while the search warrant was executed and then later released without charges.

Plaintiff initiated this action in May 2012 asserting claims under 42 U.S.C. § 1983 of excessive force and violations of state law.   Presently before this Court is the summary judgment motion of Defendants County of Erie; the Erie County Sheriff's Department (ECSD); ECSD Captain Gregory Savage; ECSD Deputies Jordan Graber, Warren Hawthorn, Erik Kaderli, Warren Luick, Matt Noecker, Scott Piel, Dan Walczak, Gregory Kent, and David Delecki; and Rosanne Myers as executrix of the estate of ECSD Deputy Daryl Demari (collectively the "County Defendants"). Also before this

Court is the summary judgment motion of the City of Lackawanna and Lackawanna City Police Officers Jeffrey Welsh, Philip Fraterrigo, Aaron Brennan, Chuck Jaworski, and Mark Packard (collectively the "City Defendants").  For the following reasons, the County Defendants' motion is granted in part and denied in part, and the City Defendants' Motion is granted in its entirety.

## II. BACKGROUND

On January 28, 2011, as part of a widespread narcotics investigation involving multiple law enforcement agencies, a search warrant was executed at a residence in the City of Lackawanna. (County Stmt. of Facts ¶14, Docket No. 35-2; City Stmt. of Facts ¶¶ 1-2, Docket No. 36-5.[1]) ECSD Deputies were assigned to enter the residence and secure all occupants therein. (Michel Aff. ¶¶ 7, 11, Docket No. 36-1.) The Lackawanna City Officers were assigned to the search team, which would enter after the residence had been secured. (Michel Aff. ¶¶ 8, 11.)

Plaintiff was an overnight guest at this residence and was asleep on a futon in the living room when the search warrant was executed. (Pl's Aff. ¶¶ 4-5, Docket No. 38-6.) Plaintiff alleges that he first woke up when he was lifted by several ECSD Deputies. (Pl's Aff. ¶ 5.) The ECSD Deputies allegedly slammed Plaintiff face-first onto the floor and then tightly zip tied his hands, causing his wrists to bleed. (Pl's Aff. ¶¶ 7, 9-10; Pl's Dep. at 31-33, 40, Docket No. 40-2.) The ECSD Deputies proceeded to strike, elbow, and kick him in the back, head, face, and jaw while one of the deputies used threatening, offensive language throughout the course of the encounter. (Pl's Aff. ¶¶ 9–

---

[1] Unless otherwise stated, the referenced paragraphs from Defendants' Statements of Facts are undisputed.

13; Pl.'s Dep. at 19, 31-33, 36, 39-40.) Further, Plaintiff alleges that he felt gun rifles jabbing at him during the encounter. (Pl's Aff. ¶ 12.) Plaintiff maintains that he did not resist at any point, that he did not attempt to conceal his hands, and that he did not make a gun-like gesture at the ECSD Deputies. (Pl's Aff. ¶¶ 14-16.) As a result of the physical force used by the deputies, Plaintiff suffered numerous contusions, bruises, and abrasions. (Pl's Aff. ¶¶ 17, 23.)

Plaintiff remained zip tied as he was picked up from the floor by the ECSD Deputies and placed on the futon, where he remained seated during the search of the residence. (Pl's Dep. at 29; County Stmt. of Facts ¶ 27.) Plaintiff asserts that two Lackawanna City Officers entered the residence, but that they were not present until after the ECSD Deputies left the premises. (Pl's Dep. at 19-20, 34.) One of the Lackawanna City Officers removed the zip ties from Plaintiff's wrists when he asked to have them removed. (Pl's Dep. at 34.)

In contrast to Plaintiff's version of events, the ECSD Deputies assert that when they made their initial entry into the dark residence, Deputy Dan Walczak was the first to encounter Plaintiff sleeping on a futon in the living room area. (Walczak Aff. ¶ 6, Docket No. 35-3; see also Hawthorn Aff. ¶¶ 6-14; Noecker Aff. ¶¶ 7-15.) Deputy Walczak pointed his gun at Plaintiff and told Plaintiff to show his hands, which were concealed under a blanket. (Walczak Aff. ¶ 6.) In response, Plaintiff removed his hands from the blanket, pantomimed a shooting gesture with his thumb and forefinger at Deputy Walczak, then he placed his hands back under the blanket and turned to face the wall. (Walczak Aff. ¶ 7.) Deputy Daryl DeMari pulled the blanket off of Plaintiff and commanded him to get on the floor. (Walczak Aff. ¶ 8.) When Plaintiff ignored

this command, Deputies Walczak and DeMari lifted him up from the futon and placed him face down on the floor. (Walczak Aff. ¶ 8.)

The ECSD Deputies repeatedly asked Plaintiff to show his hands, which were hidden under his abdominal region, to insure that he did not have a weapon or narcotics. (Walczak ¶ 9.) Plaintiff "continued to be combative and non-compliant by keeping his hands under his abdominal area" where the ECSD Deputies were unable to see them. (Walczak Aff. ¶ 10.) Deputy Walczak attempted to grab Plaintiff's hands and place them in a viewable position, but Plaintiff resisted. (Walczak Aff. ¶ 11.) Deputy DeMari placed his knee between Plaintiffs shoulder blades, which caused Plaintiff to release his hands. (Walczak Aff. ¶ 11.) Deputy Walczak then placed plastic restraints on Plaintiff's hands. (Walczak Aff. ¶ 12.) Plaintiff was picked up off the floor and seated on the futon while the remainder of the search was conducted. (Walczak Aff. ¶ 13.)

Plaintiff commenced this action in New York State Supreme Court, Erie County, in January 2012 alleging federal and state claims of excessive force, assault, battery, and negligent hiring, training, and supervision.   Defendants removed the matter to this Court in May 2012.


### III.   DISCUSSION

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010). A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine

whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248), *cert denied*, 540 U.S. 811 (2003). A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**A.    Excessive Force Claims against the Individual Officers**

In his second and third causes of action, Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for Defendants' alleged violation of his constitutional rights based on the use of excessive force by law-enforcement officials during the execution of a search warrant. Civil liability is imposed under § 1983 only on persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. On its own, § 1983 does not provide a source of substantive rights; rather, it provides a method for vindicating federal rights that are conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1965, 104 L. Ed. 2d 443 (1989)).

Here, Plaintiff's § 1983 claims find their origin in the Fourth Amendment, which is applicable to the States by way of the Fourteenth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable

... seizures." U.S. Const. amend. IV. Fourth Amendment excessive-force claims are analyzed under a standard of objective reasonableness. <u>Graham</u>, 490 U.S. at 394. This requires a court to "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." <u>United States v. Place</u>, 462 U.S. 696, 703, 103 S. Ct. 2637, 77 L. Ed. 2d 110  (1983).  Thus, although an officer is justified in using force when a person who he is trying to seize resists, threatens, or assaults the officer, "the force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." <u>Sullivan v. Gagnier</u>, 225 F.3d 161, 165-66 (2d Cir. 2000). To establish an excessive force claim, a plaintiff must "show that the officers' use of force was unreasonable in light of the facts and circumstances confronting them, without regard to their underlying motivation." <u>Graham</u>, 490 U.S. at 397.

1.   <u>ECSD Deputies' Alleged Excessive Use of Force</u>

The ECSD Deputies argue that summary judgment is warranted on Plaintiff's 1983 claim, as well as Plaintiff's first and fourth causes of action for assault and battery,[2] because: (1) the force used to seize Plaintiff was objectively reasonable under the circumstances; and (2) the *de minimus* nature of Plaintiff's injuries is inconsistent with his version of events. (County Mem. of Law at 4-9.)

---

[2] Plaintiff's state-law claims for assault and battery against the County Defendants are based on the same events and are subject to the same analysis. " '[E]xcept for § 1983's requirement that the tort be committed under color of state law,' the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under § 1983 are the same." <u>Cabral v. New York City</u>, No. 12 Civ. 4659(LGS), 2014 WL 4636433, *10 (S.D.N.Y. Sept. 17, 2014) (quoting <u>Posr v. Doherty</u>, 944 F.2d 91, 95 (2d Cir. 1991)).  Indeed, the County Defendants make no distinction between these causes of action in their brief, therefore the Court will address these claims together.

Initially, the County Defendants base their reasonableness argument on the events "as described by the [ECSD] SWAT team members." (County Defs' Mem of Law at 7, Docket No. 35-1.) This ignores the well-established standard that the facts on a summary judgment motion must be construed in the light most favorable to the non-moving party. <u>Dallas Aerospace, Inc.</u>, 352 F.3d at 780.  The factual discrepancies between the ECSD Deputies' version of events and Plaintiffs version, particularly with respect to the deputies' alleged actions after Plaintiff was restrained, cannot be accounted for by subjective differences in perspective.  <u>See generally</u> <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996) (courts must consider the perspective of the officer when analyzing excessive force claims). If credited by a jury, Plaintiff's description of being kicked and struck after being cuffed on the floor would suffice to support his excessive force claims. <u>See</u> <u>Williams v. County of Nassau</u>, No. 10-CV-4815(WFK)(ARL), 2014 WL 4101545, *7  (E.D.N.Y. Aug. 18, 2014) (denying summary judgment on excessive force claim where plaintiff alleged, among other things, that officers continued to hit, kick, and strike him after he was handcuffed); <u>Johnson v. City of N.Y.</u>, 05–CV–2357, 2006 WL 2354815, at *5 (S.D.N.Y. Aug.14, 2006) ("no objective need to 'stomp' and 'kick' an individual already under police control"); <u>see generally</u> <u>Maxwell v. City of N.Y.</u>, 380 F.3d 106, 108-09 (2d Cir. 2004) (gratuitous force resulting in only a minor scrape actionable on a Fourth Amendment excessive force claim).

The County Defendants further argue that Plaintiff's medical records establish that his injuries were merely *de minimus*, and as such fail to support his alleged version of events.  Specifically, Defendants assert that, due to the weight of the equipment worn by the ECSD Deputies, any kick would have resulted in injuries far more serious than

bruises and a sore back. (County Mem. of Law at 7; County Stmt of Facts Ex G (medical records from January 28, 2011 indicating that Plaintiff was prescribed Motrin for multiple contusions and abrasions).)  Courts have granted summary judgment on a Fourth Amendment excessive force claim where only minimal abrasions resulted from temporary handcuffing.  See Selvaggio v. Patterson, -- F. Supp. 3d --, 2015 WL 1293007, *13-14 (E.D.N.Y. 2015) (collecting cases).  However, as noted above, the absence or *de minimus* nature of an injury is irrelevant where the defendants' alleged actions were gratuitous. See Maxwell, 380 F.3d at 108-09; Williams, 2014 WL 4101545 at *7; Johnson, 2006 WL 2354815 at *5; see also Lozada v. Weilminster, -- F. Supp. 2d. --, 2015 WL 1311174, *12 (E.D.N.Y. 2015) (summary judgment inappropriate despite minimal bruising where officer allegedly dragged plaintiff from the vehicle and pushed her to the ground); Lemmo v. McKoy, No. 08–CV–4264 (RJD), 2011 WL 843974, *7 (E.D.N.Y. Mar. 8, 2011) (evidence of gratuitous twisting of plaintiffs thumbs when he was already handcuffed and in a cell precluded dismissal of claim as a matter of law); Lemmo v. City of N.Y., No. 08–CV–2641, 2011 WL 4592785, *8 (E.D.N.Y. Sept. 30, 2011) (tightening handcuffs to their maximum for apparently gratuitous reasons, along with kneeing the plaintiff in his back, could constitute excessive force).  Further, although Defendants' testimony regarding the weight of their equipment raises a credibility issue regarding the extent of Plaintiff's allegations, it does not render his testimony incredible as a matter of law.

Finally, the ECSD Deputies argue that they are, at minimum, entitled to qualified immunity with respect to Plaintiff's excessive-force claims. "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Zeller v. Summerlin</u>, 494 F.3d 344, 367 (2d Cir. 2007) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396, 73 L. Ed. 2d 396 (1982)).  Further, "[e]ven where the plaintiff's federal rights and the scope of the official's permissible conduct are clearly established, the qualified immunity defense protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." <u>Lennon v. Miller</u>, 66 F.3d 416, 420 (2d Cir. 1995) (citation omitted).  Here, however, if a jury were to credit Plaintiff's testimony, it cannot be said that "officers of reasonable competence could disagree" on the legality of the ECSD Deputies' actions in kicking and striking Plaintiff after he was handcuffed on the floor. <u>Id</u>. (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)).

Accordingly, the § 1983 excessive force claim (Plaintiff's second cause of action) against the ECSD Deputies withstands summary judgment.  For the same reasons, Plaintiff's state-law claims for battery (first cause of action) and assault (fourth cause of action) also survive against these Defendants.

2.    The City Officers' Alleged Failure to Intervene

Under § 1983 excessive-force claims, police officers "have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988). Plaintiff's third cause of action alleges that the Lackawanna City Officers are liable under § 1983 for failing in this duty.  These Defendants contend that they are entitled summary judgment because the record establishes they neither personally used force

on Plaintiff, nor were they in a position to intercede on Plaintiff's behalf with respect to any improper action by the ECSD Deputies. (City Mem. of Law at 9-13.) Plaintiff argues that, because the incident lasted for ten to thirty minutes, there is a question of fact as to whether the City Officers observed any impermissible activity. (Pl's Opp'n to City at 5-6.)

To establish liability on the part of a defendant under a failure-to-intervene theory, a plaintiff must show that the defendant (1) possessed actual knowledge that a fellow officer was using excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring or continuing; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. Kornegay v. New York, 677 F. Supp. 2d 653, 658 (W.D.N.Y. 2010); see Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

Here, the City Officers' evidence demonstrates that they were not involved in the initial entrance of the residence and that they did not witness the alleged excessive force. (Welsh Aff. ¶ 11, Docket No. 36-1 Ex. B; Fraterrigo Aff. ¶¶ 11-12, Docket No. 36-1 Ex. C.) City Officers Fraterrigo and Welsh entered the premises to conduct the search only after the ECSD Deputies had fully secured the premises and restrained Plaintiff and other occupants.  (Welsh Aff. ¶¶ 8, 9; Fraterrigo Aff. ¶¶ 8, 9.) Officer Jaworski did not enter the premises until Officers Fraterrigo and Welsh were engaged in the search and Plaintiff was seated on a futon in the living room of the searched premises. (Jaworski Aff. ¶ 10, Docket No. 36-1 Ex. D.) Neither Officer Brennan nor Officer Packard was a part of the entry or search team at the residence,  and neither was present when the ECSD Deputies restrained Plaintiff or when the City Officers

conducted the search.  (Brennan Aff. ¶ 10, Docket  No. 36-1 Ex. E; Packard Aff. ¶¶ 8–10, Docket No. No. 361 Ex. F).

Plaintiff's own testimony supports the conclusion that none of the City Officers had an opportunity to intervene.  He could only recall the City Officers being inside the residence when the ECSD Deputies were leaving and he was already seated on the futon with his hands in the zip ties. (Pl's Dep. at 20, 29, 35, 41-42.)  One of the City Officers removed the zip ties that were restraining Plaintiff's wrists upon his request and he was permitted to leave. (Pl's Dep. at 34, 44.) In fact, when asked whether, in his opinion, the Lackawanna police officers did anything wrong, Plaintiff answered, "No." (Pl's Dep. at 44.).

As a result, the Lackawanna City Defendants are entitled to summary judgment on Plaintiff's § 1983 claims against the City Officers.

## B.    Municipal Liability under § 1983

### 1.    The County's Liability

Plaintiff also alleges in his second cause of action that the County violated his civil rights because it "had a policy and custom in place that tolerated the use of excessive force to subdue suspects . . . [and] otherwise tolerated and encouraged excessive force in detaining suspects." (Sec. Am. Compl. ¶ 54.)  Although the County Defendants are correct that an employer may not be held vicariously liable under § 1983, "[a] municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson, __ U.S. __, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (citing Monell v. New York City Dept. of Social

<u>Servs.</u>, 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  For example, a plaintiff can establish a municipality's liability by proving that " 'action pursuant to official policy' caused [his] injury." <u>Connick</u>, 131 S. Ct. at 1359 (quoting <u>Monell,</u> 436 U.S. at 691).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." <u>Id.</u>

Here, the County Defendants correctly assert (County Mem. of Law at 17) and Plaintiff does not dispute (Pl's Opp'n to County at 13) that there is no evidence of any such official policy or custom.  The second cause of action is therefore dismissed as against the County itself.

2.   <u>City of Lackawanna's Liability under § 1983</u>

Plaintiff's third cause of action similarly alleges that the City of Lackawanna "had a policy and custom in place that tolerated the use of excessive force to subdue suspects . . . [and] otherwise tolerated and encouraged excessive force in detaining suspects." (Sec. Am. Compl. ¶ 60.)  The City argues that this claim must be dismissed because, in addition to the absence of evidence that any alleged action or inaction of the City officers occurred due to an official policy, there can be no municipal liability absent a finding of a constitutional violation.  (City Mem. of Law at 13-17.)  The City is correct on both arguments. <u>see</u> <u>Vassallo v. Lando</u>, 591 F. Supp. 2d 172, 202 (E.D.N.Y. 2008) (no <u>Monell</u> claim can lie against a municipality absent an underlying constitutional violation committed against a plaintiff by the individual defendants) (citing <u>Segal v. City of N.Y.</u>, 459 F.3d 207, 219 (2d Cir. 2006)).

Moreover, Plaintiff fails to expressly oppose these arguments in his opposition, arguably rendering this claim against the City abandoned. Davidson v. Desai, 817 F. Supp. 2d 166, 187 (W.D.N.Y. 2011) (considering a claim abandoned where plaintiff failed to oppose the defendant's summary judgment argument on that claim) (citing Molinari v. Bloomberg, 564 F.3d 587, 609 n. 15 (2d Cir. 2009)).  Plaintiff does assert, with little elaboration, that the "Lackawanna Defendants . . . are liable for the actions of County of Erie Defendants as County of Erie Defendants were the agents of Lackawanna Defendants by being permitted [to] act on Lackawanna Defendants' behalf in executing the search warrant on the date of the incident." (Pl's Opp'n to City at 5.) Even if an agency relationship existed such that the City of Lackawanna could arguably be held liable for the actions of the ECSD Deputies – a theory improperly raised for the first time in Plaintiff's opposition – Plaintiff fails to offer any evidence that the Deputies acted pursuant to an official City of Lackawanna custom or policy, or that any improper practice was so consistent and widespread as to "imply the constructive acquiescence of senior policy-making officials." Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006) (quoting Sorlucco v. N.Y. City Police Dep't, 971 F.2d 864, 870 (2d Cir. 1992)); see Connick, 131 S. Ct. at 1359; see generally Davis v. Connecticut Community Bank, 937 F. Supp. 2d 217, 238 (D. Conn. 2013) (inappropriate to consider new theory raised for the first time in summary judgment opposition due to the absence of notice to movant); Global Crossing Bandwidth, Inc. v. Locus Telecomm., Inc., 632 F. Supp. 2d 224, 245 (W.D.N.Y. 2009) (new claim may not be raised for the first time in motion papers).  This claim is therefore dismissed.

**C.     State Law Claims**

    1.     The County's Vicarious Liability for Plaintiff's State Law Claims

Plaintiff's first and fourth causes of action for assault and battery are also asserted against the County itself on the ground that the individual deputies' actions were performed in the furtherance of their employment duties. (Sec. Am. Compl. ¶¶ 46, 65.)  It is well established in New York State that a county cannot be held liable under the doctrine of *respondeat superior* for the actions of its sheriff or sheriff's deputies. Cash v. Cnty. of Erie, No. 04-CV-0182C(F), 2007 WL 2027844, *5 (W.D.N.Y. July 11, 2007); see Mosey v. County of Erie, 117 A.D.3d 1381, 1385, 984 N.Y.S.2d 706 (N.Y.A.D. 4th Dep't 2014); Green v. Fulton Cnty., 123 A.D.2d 88, 89, 511 N.Y.S.2d 150, 151-52 (3d Dep't 1987); Marashian v. City of Utica, 214 A.D.2d 1034, 1034, 626 N.Y.S.2d 646, 647 (4th Dep't 1995). However, a county may establish a local law that expressly assumes liability for the acts of its sheriff and deputies. Barr v. County of Albany, 50 N.Y.2d 247, 256, 406 N.E.2d 481 (1980).

Here, the County asserts that, although it has adopted a local law providing for the indemnification of its employees for actions taken in the course of their employment, the County has not assumed vicarious liability for those acts.  (County Mem. of Law at 16 (citing Erie County Legislature Resolution dated October 14, 1984 (Comm. 14D-55)); compare Nichols v. County of Rensselaer, 129 A.D.2d 167, 169-70, 517 N.Y.S.2d 315 (N.Y.A.D. 3d Dep't 1987) (local law providing indemnification for deputies' acts did not manifest county's express willingness to be held vicariously liable for those acts), with Barr, 50 N.Y.2d at 255-56 (assumption of liability found in local law stating that an act or omission of a county employee "shall be the act or omission of the county").   Plaintiff

does not dispute the assertion that no such local law exists, but argues that the County failed to present sufficient evidence of this fact in admissible form in support of its summary judgment motion. (Pl's Opp'n to County at 12 (citing Curtiss v. County of Livingston, 231 A.D.2d 960, 648 N.Y.S.2d 387 (N.Y.A.D. 1996)).

Plaintiff is correct that, under New York procedure, a summary judgment movant's failure to tender sufficient evidence in admissible form establishing the absence of a triable question of material fact warrants dismissal of the motion "regardless of the sufficiency of the opposing papers." Curtiss, 231 A.D.2d at 960 (citation omitted).  The Second Circuit, however, has stated that under the Federal Rules of Civil Procedure, which are applicable even when the substance of a claim is governed by state law, "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary motions." Brady v. Town of Colchester, 863 F.2d 205, 210-11 (2d Cir. 1988); Tenay v Culinary Teachers Ass'n of Hyde Park, 281 F. App'x 11, 12-13 (2d Cir. 2008); see generally Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 111-12 (2d Cir. 2013).  To that end, "in cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Brady, 863 F.2d at 210-11 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-26, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); see Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

Accordingly, because Plaintiff bears the burden at trial of establishing that the imposition of vicarious liability on the County is proper, see generally Fenster v. Ellis, 71 A.D.3d 1079, 1081, 898 N.Y.S.2d 582 (N.Y.A.D. 2d Dep't 2010), the County appropriately relied on the absence of evidence that it had assumed any such liability. Crawford, 758 F.3d at 486; Celotex Corp., 477 U.S. at 323.  In opposition, Plaintiff does not deny the assertion that the requisite local law has not been adopted.  The first and fourth causes of action are therefore dismissed as against the County.

2.      The County's Liability for Negligent Hiring, Training, and Supervision

Plaintiff's fifth cause of action asserts a state law claim for negligent hiring, training, and supervision against the County.  The County Defendants argue that this claim must be dismissed because the "only fair reading" of this claim "is that [P]laintiff is seeking liability on a theory of vicarious liability." (County Mem. of Law at 15.)  However, claims for negligent hiring, training, and supervision are based on an employer's direct liability, and are subject to dismissal only where duplicative of an asserted vicarious liability claim.  See Eckardt v. City of White Plains, 87 A.D.3d 1049, 1051, 930 N.Y.S.2d 22 (N.Y.A.D. 2d Dep't 2011); Ashley v. City of N.Y., 7 A.D.3d 742, 743, 779 N.Y.S.2d 502 (N.Y.A.D. 2d Dep't 2004).  In contrast, "[i]n instances where vicarious liability for an employee's torts cannot be imposed upon an employer, a direct cause of action against the employer for its own conduct, be it negligent hiring, supervision, or other negligence, may still be maintained." Selmani v. City of N.Y., 116 A.D.3d 943, 944, 984 N.Y.S.2d 114 (N.Y.A.D. 2d Dep't 2014); (citing Doe v. Guthrie Clinic, Ltd., 22 N.Y.3d 480, 485, 982 N.Y.S.2d 431 (2014)).  Because the County Defendants' argument fails to account for this distinction, summary judgment on this claim must be denied.

3.    The City's Liability for Negligent Hiring, Training, and Supervision

In their motion for summary judgment, the City Defendants argue that Plaintiff's sixth cause of action for negligent hiring, training, and supervision must be dismissed as against the City because Plaintiff failed to sufficiently plead this cause of action, and because this claim cannot stand in the absence of a finding that the City officers committed a wrongful act. As these Defendants correctly state, Plaintiff's failure to oppose this portion of the City Defendants' motion warrants dismissal of the claim as abandoned. Davidson, 817 F. Supp. 2d at 187; see Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."). Further, because the excessive force claim was dismissed as against the City Officers, Plaintiff is unable to establish the requisite harm to support a finding of negligence on the part of the City.  See generally Borden v. Capital Dist. Transp. Auth., 307 A.D.2d 1059, 1061, 763 N.Y.S.2d 860 (N.Y.A.D. 3d Dep't 2003).  Plaintiff's sixth cause of action is therefore dismissed.

**D.    Punitive Damages**

The County further contends that any claim for punitive damages must be dismissed as against it because such damages are not recoverable against a municipality. (County Mem. of Law at 13.) Initially, Plaintiff seeks punitive damages for his first, second, third, and fourth causes of action against "the Defendants in their individual capacities," a category presumably excluding the County itself. (Sec. Am. Compl. at 17 ((a)–(d)).) Moreover, Plaintiff does not dispute that punitive damages are not available against a municipality in a §1983 action. See Dill v. Village of Gowanda,

952 F. Supp. 989, 997 (W.D.N.Y.1997) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)).   Instead, Plaintiff contends that, as discussed above, the County has agreed to indemnify the ECSD Deputies in the event of a successful claim against them.   Plaintiff therefore argues that, in the event the deputies are found liable for punitive damages and "attempt to introduce evidence of their individual net worth to lessen the award of punitive damages, Plaintiff is entitled to introduction of evidence concerning the potential for said Defendant Sheriffs [deputies] to be indemnified." (Pl's Opp'n to County at 11.)   The County is therefore granted summary judgment with respect to the punitive damages claims asserted against it, if any, without prejudice to Plaintiff's right to be heard on indemnification should the issue of the deputies' net worth arise.

## IV.   CONCLUSION

For the reasons stated above, this Court finds that Plaintiff's first, second, and fourth causes of action for battery, excessive force under § 1983, and assault survive against the individual ECSD Deputies but are dismissed as against the County. Summary judgment is denied with respect to Plaintiff's fifth cause of action for negligent hiring, training, and supervision as against the County.

The Court finds that the City Defendants are entitled to summary judgment on Plaintiff's third cause of action for excessive force under § 1983 and Plaintiff's sixth cause of action for negligent hiring, training, and supervision. The Second Amended Complaint is therefore dismissed as against these Defendants.

## V.      ORDERS

IT HEREBY IS ORDERED, that County Defendants' Motion for Summary Judgment (Docket No. 35) is GRANTED in part and DENIED in part, and it is further

FURTHER, that City Defendants' Motion for Summary Judgment (Docket No. 36) is GRANTED in its entirety.

SO ORDERED.


Dated: April 10, 2015
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Senior United States District Judge
